Slip Op. 14-157

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. <br><br> WHIRLPOOL CORPORATION, <br><br> Defendant-Intervenor. | Before: Nicholas Tsoucalas, Senior Judge <br><br> Court No. 13-00099 <br><br> PUBLIC VERSION |

OPINION

[The Department of Commerce's remand determination is sustained.]

Dated: December 24, 2014

Warren E. Connelly, J. David Park, and Nazak Nikakhtar, Akin Gump Strauss Hauer & Feld LLP, of Washington, DC, for Plaintiff. Phyllis L. Derrick, Akin Gump Strauss Hauer & Feld LLP, of Washington, DC, consultant for Plaintiff.

Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant.  With him on the brief were Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director.  Of counsel on the brief was Whitney Rolig, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Jack A. Levy, John D. Greenwald, Myles S. Getlan, Thomas M. Beline, and Jonathan M. Zielinski, Cassidy Levy Kent (USA) LLP, of Washington, DC, for Defendant-Intervenor.

**Tsoucalas, Senior Judge:**  This action involves a challenge contesting subsidy calculations that were made by

defendant Department of Commerce ("Commerce") in the final results of a countervailing duty ("CVD") investigation covering large residential washers ("LRWs") from the Republic of Korea. See Large Residential Washers From the Republic of Korea: Final Affirmation Countervailing Duty Determination, 77 Fed Reg. 75,975 (Dec. 26, 2012)("Final Determination"); See also Issues and Decision Memorandum for the Final Determination in the CVD Investigation of LRWs from the Republic of Korea (Dec. 18, 2012) ("IDM"). Before the court are the Final Results of Redetermination Pursuant to Court Order, ECF No. 50 (Apr. 11, 2014) ("Remand Results"), filed by Commerce pursuant to Samsung Electronics Co., Ltd. v. United States, 38 CIT __, 973 F.Supp.2d 1321 (2014)("Samsung I"). The relevant facts and procedural history are set forth in Samsung I. Familiarity with the court's decision in Samsung I is presumed.

Plaintiff Samsung Electronics Co., Ltd. ("Samsung" or "Plaintiff") contests the Remand Results. Defendant-intervenor Whirlpool Corporation supports Commerce's findings in its Remand Results. For the reasons discussed below, the court sustains the Remand Results.

**JURISDICTION and STANDARD OF REVIEW**

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006) and section 516A(a)(2)(B)(I) of the Tariff Act of

1930 (the "Act"),[1] as amended, 19 U.S.C. § 1516a(a)(2)(B)(I) (2006).  The court will uphold Commerce's remand redetermination in a CVD investigation unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(I).

Additionally, "an agency's interpretation of its own regulations is entitled to broad deference from the courts." Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352, 1363 (Fed. Cir. 2005).

**Discussion**

In the original proceeding, Commerce determined that the Government of Korea ("GOK") provided countervailable subsidies to Samsung, warranting the application of a 1.85% ad valorem CVD rate. See Final Determination, 77 Fed. Reg. at 75,977.  Of particular relevance to this instant action, Commerce found that Samsung's tax credits under the Republic of Korea Restriction of Special Taxation Act (RSTA) Article 10(1)(3) were de facto specific because Samsung received a disproportionately large share of the total benefit the GOK conferred under this program.  See IDM at

---

[1] Further citations to the Tariff Act of 1930 are to the relevant portions of Title 19 of the U.S. Code, 2006 edition, and all applicable amendments thereto.

Court No. 13-00099                                                    Page 4

11-13.  The GOK provides RSTA Art. 10(1)(3) tax credits to companies making eligible investments in research and human resources development ("R&D").  See Remand Results at 3-4. Specifically, Commerce determined that Samsung received [[  ]]% of the total benefit the GOK conferred under RSTA Art. 10(1)(3), while the average beneficiary received [[    ]]%.  See Calculations for Samsung (Dec. 18, 2012), Confidential Rec. 196, Att. 7 at 1.

Under the Act, "a countervailable subsidy is a subsidy . . . which is specific as described in [19 U.S.C. § 1677(5A)]."  19 U.S.C. § 1677(5)(A).  Where the subsidy in question is a domestic subsidy, as is the case here, Commerce may find that the subsidy is specific as a matter of law or as a matter of fact.  19 U.S.C. § 1677(5A)(D).

A domestic subsidy is specific in fact if "[a]n enterprise or industry receives a disproportionately large amount of the subsidy."  19 U.S.C. § 1677(5A)(D)(iii)(III).  The Court of Appeals for the Federal Circuit held that "determinations of disproportionality . . . are not subject to rigid rules, but rather must be determined on a case-by-case basis taking into account all the facts and circumstances of a particular case." AK Steel Corp. v. United States, 192 F.3d 1367, 1385 (Fed. Cir. 1999). Accordingly, the court seeks to determine whether Commerce's

disproportionality finding in its Remand Results was reasonable given the facts of the instant case. Samsung I, 973 F.Supp.2d at 1328.

In Samsung I, the Court remanded the Final Determination with instructions to revisit its determination regarding the disproportionality of Samsung's Art. 10(1)(3) tax credits. Samsung I, 973 F.Supp.2d at 1328. The Court held that "Commerce's determination was unreasonable because it did not adequately address how Samsung's Art. 10(1)(3) tax credit was disproportionately large based on the facts in the case." Id. The Court stated that "[o]n remand, Commerce is not barred from comparing Samsung's share of the total benefit to the share an average beneficiary received, but it must explain, with specific reference to the facts of this case, why such a comparison is indicative of disproportionality." Id.

In its Remand Results, Commerce continued to find that Samsung received a disproportionately large amount of the benefits under the RSTA Art. 10(1)(3). See Remand Results at 4–5. On remand, Commerce: (1) clarified its findings with respect to whether RSTA Art. 10(1)(3) conferred benefits pursuant to a "standard pricing mechanism"; (2) analyzed Samsung's share of benefits under Art. 10(1)(3) relative to the amount received by

the other 99 largest recipients of benefits under the program; and (3) analyzed Samsung's tax savings under RSTA Art. 10(1)(3) relative to the tax savings that the other 99 largest recipients received in relation to their total tax liability.

**I. Commerce Reasonably Concluded that RSTA Art. 10(1)(3) Does Not Confer Benefits According to a Standard Pricing Mechanism**

Plaintiff argues that Commerce "continues to erroneously rely on the very same method for determining disproportionality that this Court initially found to be unreasonable 'because it did not adequately address how Samsung's Art. 10(1)(3) tax credit was disproportionately large based on the facts in the case.'" Pl.'s Br. at 1 (citing Samsung I, 973 F.Supp.2d. at 1328). Plaintiff insists that Commerce incorrectly distinguishes the tax credit in the instant case from the "standard pricing mechanism" which conferred a benefit based on "usage levels" found in the electricity benefit programs considered in Bethlehem Steel v. United States. Id. at 4 (citing Bethlehem Steel v. United States, 25 CIT 307, 322, 140 F. Supp. 2d 1354, 1369 (2001), amended by, 25 CIT 627, 155 F.Supp.2d 7071 (2001)). Plaintiff also argues that the fact that the amount a beneficiary may claim on their tax returns differs from the amount of tax credits that beneficiary

has earned "does not destroy the proportionality" of the subsidy. Id. at 6.

Plaintiff's arguments are unconvincing. In Samsung I, the court noted that Commerce has previously applied the concept of a "standard pricing mechanism" with regards to analyzing whether a company received a disproportionate amount of benefits under to a subsidy. See Final Affirmative CVD Determinations: Pure Magnesium and Alloy Magnesium From Canada, 57 Fed. Reg. 30,946 (Jul. 13, 1992); See also Samsung I, 973 F.Supp.2d at 1326–27. The court also noted that in Bethlehem Steel v. United States, the Court found that it was reasonable for Commerce to consider an enterprise or industry's use of a subsidy program in determining whether the benefit was proportionate. See Bethlehem Steel, 25 CIT at 322, 140 F. Supp. 2d at 1369. In that case, the Korean steel industry received 51% of the discounts the GOK awarded under an electricity rate reduction subsidy. Id. Nevertheless, Commerce found that the benefit was proportionate because high electricity usage was an inherent characteristic of the steel industry, all recipients received an identical rate reduction based on a standard mechanism, and the subsidy was not designed to benefit any one industry over another. See id. at 321–23, 140 F. Supp. 2d at 1368–70.

Subsequently, on remand Commerce effectively distinguished Art. 10(1)(3) from the standard pricing mechanism in Bethlehem Steel. See id. at 322, 140 F. Supp. 2d at 1369. In Samsung I, the Court was concerned with the notion that "[i]n virtually every program that confers benefits based on usage levels one or more groups will receive a greater share of the benefits[.]" Samsung I, 973 F.Supp.2d at 1326 (citing Bethlehem Steel, 25 CIT at 322, 140 F. Supp. 2d at 1369). This concern stemmed in part from the fact that in the original proceeding, Commerce's analysis of the structure of Art. 10(1)(3) was limited to the following: the GOK calculates a company's Art. 10(1)(3) tax credit in one of two ways, either 40% of the difference between eligible expenditures in the tax year and the average of eligible expenditures in the prior four years, or a maximum of 6% of eligible expenditures in the current tax year. See LRWs From the Republic of Korea: Preliminary Affirmative CVD Determination and Alignment of Final Determination With Final Antidumping Determination, 77 Fed.Reg. 33,181, 33,187 (Jun. 5, 2012). Commerce addressed the Court's concern in its Remand Results by providing evidence supporting its finding that RSTA Art. 10(1)(3) tax credits are not based strictly on the basis of a company's qualifying investments in a given year. Remand Results at 6–7. Specifically,

Commerce found that companies were permitted to claim RSTA Art. 10(1)(3) tax credits by "using one of two formulas: as a percentage of the difference between qualifying research and development expenses in the current tax year and the average of qualifying expenditures from the previous four years, or using a maximum percentage of total qualifying research and development expenses for the current tax year." Id. at 6. Commerce also found the tax credits a company was eligible to receive varied due to the fact that "RSTA Article 10(1)(3) establishes different rates for small- and medium-sized enterprises [("SMEs")] versus larger companies." Id. at 7. Additionally, Commerce determined that, "under the first formula, SMEs may claim up to 50 percent, while larger corporations may claim only 40 percent; under the second formula, SMEs may claim up to 25 percent, while larger corporations are limited to a maximum of six percent." Id. at 7-8. Based on these variations, Commerce reasonably distinguished the subsidy program in the instant case from the program present in Bethlehem Steel, which conferred benefits based solely on a company's qualifying expenditures. Because under RSTA Art. 10(1)(3) companies with identical amounts of eligible investments could receive different amounts of the tax credits, Commerce reasonably concluded based on the facts in the instant case that RSTA Art. 10(1)(3) tax credits

are unlike the benefits conferred in Bethlehem Steel. See Bethlehem Steel, 25 CIT at 321–23, 140 F. Supp. 2d at 1368–70; See also Remand Results at 8.

Commerce also provided further data demonstrating that it is inappropriate to classify RSTA Art. 10(1)(3) as a standard pricing mechanism through its analysis of the GOK's "Minimum Tax Scheme." Remand Results at 8. Commerce found that the GOK's Minimum Tax Scheme limits the amount of tax credits a beneficiary may claim under the RSTA, effectively creating a "tax ceiling." Id.; See also Def.'s App. Accompanying Resp. to Pl.'s Comments Concerning Remand Results, GOK's May 30, 2014 Resp. at 2–4. Specifically, Commerce determined that Samsung only claimed [[   ]]% of its RSTA Art. 10(1)(3) tax credits earned in 2010, while deferring the remainder. Remand Results at 8. As discussed above, because a company's RSTA Art. 10(1)(3) tax credits are based on a number of variables, such as the formula used, prior years eligible investments, and the application of Korea's Minimum Tax Scheme, Commerce reasonably concluded that RSTA Art 10(1)(3) did not qualify as a "standard pricing mechanism" which is directly proportionate to a company's qualifying expenditures. See Bethlehem Steel, 25 CIT at 321–23, 140 F. Supp. 2d at 1368–70; See also Remand Results at 7–9.

## II. Commerce Reasonably Determined that Samsung Received a Disproportionate Amount of the RSTA Art. 10(1)(3) Benefits

Plaintiff argues that Commerce relied on exactly the same methodology in its Remand Results, except here Commerce chose to alter the following: (1) "instead of using the total tax credits awarded to all 11,764 companies, [Commerce] used the tax credit awarded to just 100 companies;" (2)"instead of dividing the total credit by the total number of recipients to derive the average percentage of the total benefit received by each company, [Commerce] divided the tax credits received by 99 to get the average percentage credit received by each of the 99 companies." Pl.'s Br. at 12-13.  Since the methodology used by Commerce was "identical in concept" to the original methodology, Plaintiff therefore insists that Commerce's findings are insufficient "as a matter of fact or law to demonstrate disproportionality for the reasons that this court has previously found." Id. at 14.

Moreover, Plaintiff argues that Commerce improperly used taxable income as an appropriate variable of comparison between Samsung and the 99 companies because "the investments that are eligible for RSTA Art. 10(1)(3) tax credit are not a function of taxable income." See id. at 14-15.  Plaintiff notes that "the ratio of each company's R&D expenses that were eligible for tax credit to its total expenses," is a better variable of comparison

because such ratio would "identify those companies that were comparable in terms of their investment strategies." Id. at 15. Additionally, Plaintiff contends that Commerce improperly equated taxable income with size of company. Id. at 14-15. Plaintiff argues that Commerce should have compared companies similar to Samsung on the basis of "gross sales revenue or, alternatively, by asset value or number of employees," as opposed to using "taxable corporate income [which] is a direct function of gross revenue, permissible adjustments to revenue, and deductible expenses." Id. at 16. Finally, Plaintiff insists that taxable income as a variable is "unrelated" to disproportionately. Id. at 17.

The court is not persuaded by Plaintiff's arguments. As discussed above, in Samsung I, the court held that Commerce failed to "adequately address how Samsung's Art. 10(1)(3) tax credit was disproportionately large based on the facts in the case." Samsung I, 973 F.Supp.2d at 1328. The Court noted that "[o]n remand, Commerce is not barred from comparing Samsung's share of the total benefit to the share an average beneficiary received, but it must explain, with specific reference to the facts of this case, why such a comparison is indicative of disproportionality." Id.

In its Remand Results, Commerce continued to find that Samsung received [[   ]]% of the total benefit the GOK conferred

under RSTA Art. 10(1)(3), while the average beneficiary received [[   ]]%. Remand Results at 2. Additionally, Commerce first obtained data from the GOK allowing it to compare Samsung's total benefit under the subsidy with the 100 largest companies who received the benefit by taxable income. Id. at 9-11. In doing so, Commerce determined that "Samsung accounted for approximately [[   ]]% of RSTA Art. 10 tax credits granted to the top 100 recipients, and by its credit was equal to [[   ]]% of the credits received by the other 99 largest recipients." Id. at 10-11.

Secondly, Commerce conducted an analysis of the data it received from the GOK in order to allow it to account for company size and total tax liability. This analysis allowed Commerce to compare Samsung's reduction in taxable income with the remaining 99 companies. Commerce found that the amount of RSTA Art. 10(1)(3) tax credits Samsung received reduced its tax liability by [[   ]]%. Id. at 14. Conversely, the tax credits reduced the other 99 companies' tax liability by [[   ]]%. Id. at 14. Ultimately, Commerce found that Samsung received over [[   ]] times greater amount of tax benefits than the other companies analyzed. Id. at 14.

The court finds that Commerce's Remand Results reasonably addressed its concerns in Samsung I. At best, the

Plaintiff's arguments amount to another reasonable interpretation of the data before the court. See Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984)("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Accordingly, based on the facts of the instant case, Commerce reasonably concluded that Samsung received a disproportionately large benefit of the RSTA Art. 10(1)(3) tax benefit.

## Conclusion

For the foregoing reasons, Commerce's remand redetermination is sustained in its entirety. Judgment will be entered accordingly.

/s/ Nicholas Tsoucalas
**Nicholas Tsoucalas**
**Senior Judge**

**Dated:** December 24, 2014
**New York, New York**